The State of Ohio, Appellee, *v.* Foster et al., Appellants.

(Nos. 11220, 11221 and 11222—Decided November 9, 1970.)

*Mr. William A. McClain, Mr. Ralph E. Cors* and *Mr. William P. Whalen, Jr.,* for appellee.
*Mr. Leonard D. Slutz,* for appellants.

Shannon, P. J.   These cases are appeals on questions of law from judgments of guilt rendered by the Hamilton County Municipal Court.

Appeal was originally taken to the Court of Common Pleas of Hamilton County.   That court found itself without jurisdiction to entertain the appeal, whereupon, motions for leave to appeal were filed and subsequently granted by this court.   The cases being so markedly similar, leave was granted to argue them simultaneously.

On April 8, 1968, Christopher Russell was one of several passengers in an automobile stopped by police of the city of Cincinnati at about 10:30 p. m.   Earlier on the same day, the riot proclamation provided for in R. C. 3761.14, then effective but since repealed, had been read at the place the automobile was stopped.

James E. Foster and Anthony Smith were passengers in another automobile stopped by police of the city of Cincinnati about 10 p. m., April 8, 1968, at a location different from that involved in the case of Christopher Russell.

All three defendants, appellants herein, were charged

with violations of R. C. 3761.13, then effective but since repealed. In the affidavits upon which the accused were tried, it is alleged that they "did unlawfully continue together with more than one other person after proclamation was made as provided in Section 3761.14 of the Revised Code of Ohio, contrary to and in violation of Section 3761.13 of the Revised Code of Ohio * * *."

Trial was had separately, without jury, resulting in findings of guilt and motions for new trials were overruled.

It is conceded, although the details are not spread upon the record, that on April 8, 1968, disturbances occurred within the city of Cincinnati about and after 6 p. m., prompting the dispatch of police and troops to certain parts of the city. Police vehicles equipped with public address systems patrolled the affected areas and it is stipulated that the riot proclamation was read.

Essentially, the defendants have assigned as error that the accused committed no violation of the section of the Revised Code pursuant to which they were charged and that the findings of guilt are against the manifest weight of the evidence.

R. C. 3761.13 provided:

"No person shall assemble with two or more others to do an unlawful act with force and violence, or do such unlawful act or agree with each other to do so and make preparation or movement therefor, or continue together after proclamation is made as provided in Section 3761.14 of the Revised Code or is prevented from so being made by rioters."

R. C. 3761.14 provided:

"Whenever three or more persons are unlawfully or riotously assembled, all judges, justices of the peace, sheriffs, and other ministerial officers, forthwith upon view or as soon as may be on information, shall make proclamation in the hearing of such persons, commanding them, in the name of the state, to disperse and depart to their several homes or lawful employment, and, if such persons do not then forthwith disperse and depart, such officers shall call upon all persons near, and, if necessary, throughout the county, to aid and assist in dispersing and taking into cus-

tody all such persons. No persons, who are called upon by such officer, shall refuse to render immediate assistance.''

A reading of the bill of exceptions discloses that the trial courts adopted the view, as did the law enforcement agencies involved in the immediate control of the disturbances, that the statutes above quoted operated to establish a "curfew." The following appears as part of the testimony of a police officer upon examination in chief in the case against Russell:

"Q. Would you tell the court how the defendant himself acted at the time you were questioning the group?

"A. After asking were they aware of the curfew, I went around to the driver's side of the automobile and at this time I asked where they were going and where they lived * * *.''

In the case presented against Foster and Smith, we find this:

"Q. What, if anything, was said concerning the riot proclamation to the effect these defendants were not supposed to be out on the streets on that night in question?

"A. We asked if they were aware there is a curfew and Foster said he was aware of it.''

And, in the same vein:

"Q. What was done with the other group of people in the other automobile?

"A. They were all arrested.

"Q. What were they charged with?

"A. A riot violation of the curfew.''

While it is "love's labour lost" to interpret statutes now repealed except to resolve the instant cases, we must first resolve the question whether R. C. 3761.13 and 3761.14, together, prohibited all persons from assembling or being upon the streets after a command to a specific group of persons to disperse and depart had been made.

The consequences of such an interpretation of the statutes become readily apparent. It would place upon every enforcement agent the onus of showing that anyone upon the streets after reading of the riot proclamation was aware of the orders recited therein. Suppose such a person was a traveler just arrived. Suppose that he was one

totally deaf. Suppose that he was one departing a sanctuary or cloister. The enigmas are endless, and reason alone compels the conclusion that the code cannot be applied to impose a "curfew"; that is, a general order of withdrawal from the streets of all persons.

Next, we must address ourselves to the evidence to determine whether it supports an alternate interpretation of the law, to wit: were the defendants proved to be part of the group to which the proclamation was made and which thereafter continued together, each in the company of two or more others?

Close examination of all of the testimony fails to reveal such proof at all much less than beyond a reasonable doubt. Upon what is before us it would be purely speculative to say that the defendants reasonably could have heard the proclamation and were, therefore, acting in violation of law in failing to disperse and depart. What their purpose or intent in being upon the streets at the time they were intercepted is not germane to the issue here. There was no proof of unlawful behavior.

The police, in their legitimate and, indeed, compelling duty to preserve the safety of persons and property in a clear emergency adopted an interpretation of the law then in force which we cannot now endorse. Legislative action since taken has supplied new laws to meet the problems faced today so that what is written here is all retrospect.

The court, in processing the complaints, approached the problem upon the same footpath, searching for precedents to guide the way. The dearth of authority gave little choice save the course the bench chose.

Enjoying the benefit of hindsight, bulwarked by the enactment of new laws to supply a means to meet such problems, we now point out the error.

The judgments of guilt of the defendants James Foster, Christopher Russell and Anthony Smith, are reversed and set aside and they are discharged.

*Judgments reversed.*

HESS, J., concurs.
HILDEBRANT, J., not participating.